# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

ROSEMARY LOPEZ,

        Plaintiff,

v.                                Case No:  2:15-cv-763-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Rosemary Lopez appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability and disability insurance benefits. Because the decision of the Commissioner is supported by substantial evidence, and Plaintiff has not shown any reversible error, the decision will be affirmed.

## I. Issues on Appeal[1]

Plaintiff raises the following issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinions of Plaintiff's treating physician and other medical sources as to her mental impairments; (2) whether the ALJ properly considered Plaintiff's diagnosis of cognitive disorder; (3) whether substantial evidence supports the ALJ's determination that Plaintiff failed to meet a listed

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

impairment for mental disorders; (4) and whether substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity ("RFC").

## II.     Procedural History and Summary of the ALJ Decision

Plaintiff, Rosemary Lopez, born in 1961, is a high school graduate.   Tr. 5-8. She previously worked as a secretary in a school and in a hospital.   Tr. 7.   On October 24, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning October 23, 2012 due to anxiety, panic attacks, depression, stress, high blood pressure and migraines.   Tr. 90, 164-70, 188, 218.   The Commissioner denied Plaintiff's application initially and upon reconsideration.   Tr. 107-11, 116-20.   Plaintiff requested and received a hearing, which was held before ALJ Charles R. Howard on May 2, 2014.[2]   Tr. 2-19.   Plaintiff was represented by counsel during the hearing.   Tr. 4.   Plaintiff and VE Donna Taylor testified at this hearing.   *See* Tr. 2-19.

On May 27, 2014, the ALJ issued a decision finding Plaintiff not disabled from October 23, 2012 through the date of the decision.   Tr. 61-72.   At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018 and had not engaged in substantial gainful activity since October 23, 2012, the alleged onset date.   Tr. 63.   At step two, the ALJ determined that Plaintiff has the following severe impairments: headaches, major depressive disorder with psychosis, anxiety and panic disorder.   *Id.*   At step three,

---

[2] The ALJ appeared by videoconference and presided over the hearing from Kingsport, TN.   Tr. 61.   Plaintiff and the Vocational Expert ("VE") appeared in person in Fort Myers.   Tr. 5, 61.

the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 64-65. In doing so, the ALJ considered listings 12.04, 12.06 and any other listing under section 12.00 of the listings. Tr. 64. The ALJ then determined that Plaintiff

> has the [RFC] to perform light work[3] . . . except she should never climb ladders, ropes, or scaffolds. Due to her mental impairments, [Plaintiff] is able to perform simple, routine, repetitive tasks; able to maintain concentration and persistence for simple, routine, repetitive tasks; able to adapt to routine changes in a work setting; and [is] limited to work that requires no more than occasional interaction with the public, co-workers, or supervisors.

Tr. 65. The ALJ then determined that Plaintiff is unable to perform her past relevant work as a school secretary, teacher's aide or case worker, as these positions exceed Plaintiff's RFC due to her mental impairments. Tr. 70. Next, utilizing the services of a VE, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing other work that exists in significant numbers in the national economy, namely the occupations of small

---

[3] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

products assembler, sewing machine operator and housekeeping/cleaner. Tr. 71. The ALJ, therefore, concluded that Plaintiff has not been under a disability from October 23, 2012 through the date of the decision. Tr. 72.

On October 7, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 21-24. Accordingly, the ALJ's May 27, 2014 decision is the final decision of the Commissioner. Plaintiff filed a Complaint in this Court on December 8, 2015. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 16, 17.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact,

and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.   **Discussion**

   a.   *Whether the ALJ properly weighed the opinions of Plaintiff's treating physician and other medical professionals*

Plaintiff first argues the ALJ failed to provide good cause for giving little weight to the opinions of Plaintiff's treating psychiatrist, Miriam Ajo, M.D. Doc. 22 at 16-19. The Commissioner argues that the ALJ properly evaluated Dr. Ajo's opinions and identified good reasons supported by the record for according the opinions little weight. Doc. 23 at 9. The Court finds the ALJ provided good cause for giving little weight to Dr. Ajo's opinions.

Dr. Ajo was Plaintiff's treating psychiatrist from approximately January 2013 through March 2014. Tr. 373-77, 416-19, 422-33, 442-51, 462-64. On March 24, 2014, Dr. Ajo completed a form medical source statement, entitled "Mental Capacity Assessment," one of the opinions at issue here. Tr. 452-55. The same date, she also completed another form questionnaire, an RFC assessment. Tr. 456-57.

The ALJ discussed Plaintiff's mental health treatment records at length, beginning with treatment records in May 2011. *See* Tr. 66-67. As noted by the ALJ, when Plaintiff was last seen by Dr. Ajo in March 2014, Plaintiff denied any complaints, and her mental status evaluation was "essentially normal," except that her sister reported that she had been irritable. Tr. 67, 462-66. At the time, Dr. Ajo added Klonopin to Plaintiff's medications and suggested that she return in sixty days. Tr. 464-66.

The ALJ took into consideration Plaintiff's mental impairments when assessing her RFC:

> Due to her mental impairments, [Plaintiff] is able to perform simple, routine, repetitive tasks; able to maintain concentration and persistence for simple, routine, repetitive tasks; able to adapt to routine changes in a work setting; and limited to work that requires no more than occasional interaction with the public, co-workers, or supervisors. The undersigned notes that this conclusion is supported by treatment records and [Plaintiff's] activities of daily living, as described above. The undersigned notes that [Plaintiff] has been maintained on the same medications and dosages since May 2013 until Klonopin was added in March 2014.

Tr. 67.

As to the opinions at issue, the ALJ discussed these opinions at length and the reasons for giving them little weight:

In Exhibits 18F and 20F, Dr. M[i]riam Ajo completed a medical source statement on March 24, 2014. She indicated that [Plaintiff] had moderate (The individual would have intermittent difficulty performing in this area. The individual could generally perform satisfactorily in this area, but not always) limitations in her ability to understand and remember very short and simple instructions; to carry out very short and simple instructions; to make simple work-related decision; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to be aware of normal hazards and take appropriate precautions. She noted that [Plaintiff] had marked (There is serious limitation in this area. The individual cannot generally perform satisfactorily in this area) limitations in her ability to carry out detailed instructions; to complete a normal workday without interruptions from psychologically based symptoms; to perform at a consistent pace with a standard number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting. She indicated that [Plaintiff] had extreme (There is major limitation in this area. There is no useful ability to function in this area) limitation in her ability to remember locations and work-like procedures; to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workweek without interruptions from psychologically based symptoms; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others.

In Exhibit 19F, Dr. Ajo completed a [RFC] Questionnaire and noted that [Plaintiff's] symptoms were severe enough to interfere with attention and concentration required to perform simple work-related tasks frequently. [Sh]e identified the following side effects of any medications which may impact their capacity for work: dizziness, drowsiness, and feeling tired all the time. [Sh]e indicated that [Plaintiff] would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30 to 60 minute lunch, and the typical 15-minute break in the afternoon.

The undersigned has considered the opinions of Dr. Ajo in Exhibits 18F, 19F, and 20F, but gives her opinions little weight as they are too restrictive based on her own treatment records which show[] that

[Plaintiff] has been maintained on the same medications and dosages since May 2013 until March 2014 when Klonopin was added. The undersigned notes that [Plaintiff] has not been hospitalized for a severe mental disorder at any time during the period at issue. Furthermore, the undersigned notes that Dr. Ajo's assessments are not supported by [Plaintiff's] reported activities of daily living, as described above.

Tr. 69-70.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).[4] Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and

---

[4] The Court notes that after Plaintiff filed her application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§, 404.1520a, 404.1520c, and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Green v. Soc. Sec. Admin., Comm'r*, — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (in reviewing the ALJ's decision, refusing to apply SSR 16-3p retroactively because "administrative rules are not generally applied retroactively."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply."). *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that when the Appeals Council denies review of the ALJ's decision, appellate courts review the ALJ's decision as the Commissioner's final decision).

"may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). Moreover, there is no "rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" that leaves this Court with insufficient information to conclude that the ALJ considered Plaintiff's medical condition as a whole. *Dyer*, 395 F.3d at 1211.

The undersigned finds that substantial evidence supports the ALJ's decision to accord little weight to Dr. Ajo's opinions, the ALJ clearly articulated his reasons and provided good cause for doing so. First, the ALJ noted that the opinions were

inconsistent with Dr. Ajo's own treatment notes, and Plaintiff had been maintained on the same medications and dosages for most of her treatment with Dr. Ajo. Tr. 70. Conservative treatment and inconsistency with other treatment notes, including those of the treating physician, are valid reasons for an ALJ to discount a treating physician's opinion. *See Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007). As discussed in the ALJ's opinion, Plaintiff's treatment records with Dr. Ajo reflect that Plaintiff's condition had remained relatively stable, and her condition had improved over time. Tr. 67. From January 2013 through May 2013, Dr. Ajo noted that Plaintiff had been more active, was going to church and had better hygiene. Tr. 373-77, 416-19. Although a May 2013 treatment note indicated Plaintiff still was delusional at that time, by a September 2013 visit Plaintiff was feeling better some days, and her delusions had improved. Tr. 418, 427-31. On the other hand, Dr. Ajo also noted that Plaintiff could not drive or draw a clock, and Plaintiff may be experiencing early signs of dementia. Tr. 429. But in November 2013, Dr. Ajo reported that Plaintiff seemed to be improving, her mood was better, and she was no longer delusional. Tr. 447-51. In the same visit, Plaintiff's mood and affect were appropriate, and results of a CT scan of Plaintiff's head revealed it was within normal limits. Tr. 448-49. Dr. Ajo continued Plaintiff on her same medications. Tr. 450. In February 2014, Plaintiff still was experiencing some memory issues and delusions, but Dr. Ajo continued her on her same medications. Tr. 444-45. As noted, by March 2014, Plaintiff had no complaints, and her mental status evaluation essentially was

normal, except for the irritability cited by her sister.   Tr. 464-65.   Plaintiff was not
to return for another sixty days.   Tr. 465.

Second, the ALJ noted that Plaintiff had not been hospitalized for a severe
mental disorder at any time during the period at issue.   Tr. 70.   Although Plaintiff
correctly notes Plaintiff had hospital visits during that time period, it is speculation
that these visits could have resulted in a period of hospitalization.   Instead, the
record indicates that Plaintiff's condition improved since those visits, and she was not
otherwise hospitalized during that time.

Third, the ALJ properly considered that Dr. Ajo's opinions were not supported
by Plaintiff's reported activities of daily living.   Tr. 70; *see Phillips*, 357 F.3d at 1241.
Earlier in his opinion, the ALJ considered the four broad functional areas set out in
the regulations for evaluating mental disorders and in section 12.00C of the Listing
of Impairments, the so-called "paragraph B" criteria.[5]   Tr. 64.   He found that in
activities of daily living and social functioning, Plaintiff has moderate restrictions
and difficulties, in that she lives with her husband and family, cares for her pets,
cleans the house, reads, shops, visits her sister for meals, attends church, has friends
and entertains visitors.   Tr. 64.   He noted Plaintiff reported irritability and
paranoia, but observed that the record shows Plaintiff performed the above functions
as well.   *Id.*

Moreover, form questionnaires or so-called "checklist" opinions such as those
completed by Dr. Ajo generally are disfavored.   *See Foster v. Astrue*, 410 F. App'x

---

[5] 20 C.F.R., Part 404, Subpart P. Appendix 1.

831, 833 (5th Cir. 2011) (physician's use of "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.").  Furthermore, to the extent Plaintiff points to treatment notes that may contradict some portions of the evidence relied upon by the ALJ, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly."  *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (quoting *Richardson*, 402 U.S. at 389-409).  Moreover, the task of determining a claimant's RFC and ability to work is the province of the ALJ, not a physician such as Dr. Ajo.  *See* 20 C.F.R. § 404.1546(c).

Overall, Dr. Ajo's treatment notes do not support the restrictive limitations in her opinions.  Thus, substantial evidence supports the ALJ's decision to give little weight to these opinions.  The inconsistency between Dr. Ajo's office notes and her opinions, as well as Plaintiff's activities of daily living, as discussed provide good cause for the ALJ to accord Dr. Ajo's opinions little weight.

Plaintiff also notes that the ALJ likewise did not give more than limited weight to any of the agency psychologists' opinions.  Doc. 22 at 19.  But there, the ALJ discussed these opinions and found that Plaintiff's impairments were more severe

than reflected in those opinions and inconsistent with the RFC. Tr. 68-69. For example, one psychologist opined that Plaintiff had no severe mental impairment, but the ALJ noted that this opinion was given prior to evidence that revealed otherwise; thus he discounted it. Tr. 68. Another agency psychologist indicated that Plaintiff had no understanding and memory limitations, no sustained concentration and persistence limitations, and no adaptation limitations, among other opinions discussed by the ALJ. Tr. 68-69. The ALJ gave this opinion little weight after considering Plaintiff subjective complaints and the objective evidence. Tr. 69.

Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of state agency medical consultants as the ALJ must do for other consultants, doctors or medical specialists. 20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006). Here, contrary to Plaintiff's assertion that the ALJ improperly substituted his lay opinion for those of the medical professionals, the undersigned finds the ALJ properly explained the weight given to the state agency medical consultants and Plaintiff's treating

physician, and substantial evidence supports his determination.

        b.    *Whether the ALJ properly considered a diagnosis of cognitive disorder*

Plaintiff next asserts the ALJ committed error by failing to consider Dr. Ajo's diagnosis that Plaintiff had a cognitive disorder. Doc. 22 at 20; Tr. 36, 429, 456. Dr. Ajo provided this diagnosis on her RFC form. Tr. 456. Plaintiff further argues that the ALJ did not fully and fairly develop the record when he failed to order a neuropsychological evaluation to "flesh out" her cognitive problems and determine what role they played in Plaintiff's work limitations. Doc. 22 at 21.

Two of Dr. Ajo's records are cited by Plaintiff to support her argument. Doc. 22 at 20. The first is a treatment record dated September 4, 2013, in which Dr. Ajo commented about Plaintiff, "I suspect she is developing dementia." Tr. 429. The second, as noted, was on the RFC form in which she included as one of her diagnoses cognitive disorder, not otherwise specified. Tr. 456. As noted, the ALJ assigned this assessment little weight. Tr. 69-70. Plaintiff does not identify elsewhere in the record where either Dr. Ajo, in her treatment notes, or any other physician made this diagnosis, or how such an impairment resulted in greater limitations than those included in the ALJ's RFC assessment. As noted by the Commissioner, "the mere existence of [] impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir.1986) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of

deviation from purely medical standards of bodily perfection or normality"). Likewise, based on this scant evidence of a diagnosis, some of which was accorded little weight by the ALJ, and the evidence in the record available to and considered by the ALJ, Plaintiff has not demonstrated that the ALJ was required to order a consultative mental evaluation. *See* 20 C.F.R. §§ 404.1519a(a), (b) (listing situations that may require a consultative examination, none of which exist here).

> c. *Whether substantial evidence supports the ALJ's determination that Plaintiff failed to meet a listed impairment for mental disorders*

The ALJ considered whether Plaintiff's mental impairments, considered singly and in combination, meet or medically equal the criteria of listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders) or any other listing under section 12.00 of the listings, and determined they do not. Tr. 64-65. Plaintiff asserts this determination was not supported by substantial evidence. Doc. 22-23.

The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1625(a), 416.925(a). If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ." *Bowen,* 482 U.S. at 141, *cited in Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The Eleventh Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. A

> diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (citing 20 C.F.R. § 416.925(c)-(d)). The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing. 20 C.F.R. § 404.1520(a)(4).

If Plaintiff contends that an impairment meets a listing, as she does here, she bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson ex rel. Wilkinson*, 847 F.2d at 662. In doing so, Plaintiff must have a diagnosed condition that is included in the listings. *Id.* Diagnosis of a listed impairment, however, is not enough; as the claimant must also provide objective medical reports documenting that her impairment meets the specific criteria of the applicable listing. *Id.; accord Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

Listing 12.04 defines an affective disorder as "a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Listing 12.06 defines anxiety related disorders as disorders where "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in

obsessive compulsive disorders." *Id.* § 12.06. Both listings provide that the claimant meets the listing if the requirements in both paragraphs A and B are satisfied.[6] *Id.* §§ 12.04, 12.06. Paragraph A of both listings generally contain the types of symptoms a claimant must show. *Id.*, §§ 12.04A, 1206A. Paragraph B of both listings require a claimant to demonstrate at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

*Id.* §§ 12.04B. 12.06B.

In the present case, the ALJ evaluated the paragraph B criteria of each listing and determined that the severity of Plaintiff's mental impairments does not meet or medically equal Listings 12.04 and 12.06 or any other listing under 12.00 of the listings. Tr. 64. In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case. 20 C.F.R. § 404.1520a; *see* Tr. 64. Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration,

---

[6] As noted by the Commissioner, a claimant also can show she meets Listing 12.04 if she satisfies the criteria in paragraph C of Listing 12.04, or that she meets Listing 12.06 if she satisfies the criteria in both paragraphs A and C of Listing 12.06. 20 C.F.R. pt. 404, subpt. P, app.1, §§ 12.04, 12.06. Doc. 23 at 6 n.4. Also as noted by the Commissioner, Plaintiff does not challenge the ALJ's finding that she did not meet the paragraph C criteria; thus that issue is waived. *Id.*, *Access Now*, 385 F.3d at 1330. For purposes of its brief, the Commissioner does not dispute that Plaintiff met the criteria for paragraphs A or either listing. Doc. 23 at 6 n.5. Because the Court finds substantial evidence supports the ALJ's decision as to the Paragraph B criteria, the Court need not reach this issue.

persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more. 20 C.F.R § 404.1520a(c)(4). The ALJ's decision must incorporate findings and conclusions based on the special technique. 20 C.F.R. § 404.1520a(e)(4).

Specifically, the ALJ here found:

There are insufficient findings on either examination or diagnostic test workup to confirm the presence of an impairment or combination of impairments which meets or equals the criteria of any impairment listed therein.

The severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, or any other listing under 12.00 of the listings. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, [Plaintiff] has moderate restriction. In regards to activities of daily living, the record indicates that the claimant lived with her husband and family and that she cared for her pets, cleaned the house, read, shopped, went to her sister's to eat, went to church, had friends, and had visitors. The undersigned finds that the claimant has no more than moderate restriction in this area.

In social functioning, [Plaintiff] has moderate difficulties. [Plaintiff] reported symptoms of irritability and paranoia. However, the record indicates that [Plaintiff] lived with her husband and family and that she shopped, went to her sister's, went to church, had friends, and had

visitors. The undersigned notes that the record does not indicate greater than moderate difficulties in social functioning.

With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. [Plaintiff] reported having problems with concentration and memory; however, the record reflects that [Plaintiff] cared for her pets, cleaned the house, read, shopped, went to her sister's to eat, went to church, had friends, and had visitors. She reported that she could pay bills and count change. The undersigned notes that the record does not show evidence of greater than moderate difficulties in this area.

As for episodes of decompensation, [Plaintiff] has experienced no episodes of decompensation, which have been of ell.1ended duration. The undersigned notes that the record shows no episodes of decompensation.

Because [Plaintiff] mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

Tr. 64. Plaintiff argues that she met the requirements of paragraph B of the listings based on Dr. Ajo's mental capacity assessment (Tr. 459-61), to which, as noted, the ALJ accorded little weight and the undersigned already has concluded substantial evidence supports that decision. Doc. 22 at 22. Accordingly, the Court finds that the ALJ properly evaluated Plaintiff's mental impairments under the paragraph B criteria and adequately explained his findings; thus substantial evidence supports his determination that Plaintiff does not meet one of the listed impairments.

### d. Whether substantial evidence supports the ALJ's determination of Plaintiff's RFC

Plaintiff finally contends, in a conclusory fashion, the ALJ erred in determining Plaintiff's RFC because he failed to include several of Plaintiff's limitations, again based on the assessment of Dr. Ajo, which was properly discounted by the ALJ. Doc. 22 at 23.

The RFC is the most that a claimant can do despite her limitations. See 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, in determining Plaintiff's RFC, the ALJ considered all of Plaintiff's impairments. Tr. 65-70. He specifically discussed the evidence related to Plaintiff's mental limitations, and "[d]ue to her mental impairments" limiting her RFC to simple, routine repetitive tasks and work that requires no more than occasional interaction with the public, co-workers or supervisors. Tr. 65. He discussed that his conclusion was supported by Plaintiff's treatment records and her activities of

daily living. Tr. 67. As noted, the ALJ discussed at length Plaintiff's treatment records and opinions of Dr. Ajo, but properly discounted the weight of the opinions for the reasons discussed in this opinion. Tr. 69-70. Accordingly, substantial evidence supports the ALJ's conclusion as to Plaintiff's RFC.

## V. CONCLUSION

The undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff was not disabled from October 23, 2012 through May 27, 2014, the date of the ALJ decision, is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 6th day of September, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record